UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

                Plaintiff,            **REPORT & RECOMMENDATION**
                                                                 19 CV 2575 (ENV)(LB)

  -against-

IMRAN ALI SYED, *individually and doing business as Firdos Grill*, and FIRDOS CAFE, INC., *an unknown business entity d/b/a Firdos Grill*,

                Defendants.
------------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Plaintiff J & J Sports Productions, Inc. ("J & J") brings this action against Firdos Cafe, Inc., doing business as Firdos Grill ("Firdos Grill"), and Imran Ali Syed to recover statutory damages, enhanced statutory damages, pre and post-judgment interest, costs, and attorney's fees pursuant the Federal Communications Act of 1934 ("FCA"), codified as amended, 47 U.S.C. §§ 553 and 605. See ECF No. 1, Complaint ("Compl."). J & J alleges that defendants violated J & J's exclusive licensing rights by unlawfully receiving and displaying a boxing match at Firdos Grill on May 7, 2016. Despite proper service of the summons and the complaint, defendants have failed to respond. On August 12, 2019, the Clerk of Court noted entry of default against defendants. ECF No. 8. On August 28, 2019, plaintiff filed a motion for a default judgment. ECF No. 9. The Honorable Eric N. Vitaliano referred plaintiff's instant motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 626(b). For the following reasons, it is respectfully recommended that plaintiff's motion for a default judgment should be granted in part and denied in part and that a default judgment should be entered solely against defendant Firdos Grill in the amount of $6,600.00.

## BACKGROUND[1]

This is but one of the hundreds of cases that plaintiff has filed in the Eastern and Southern Districts alleging violations of the FCA, 47 U.S.C. §§ 553 and 605. J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc., No. 15-CV-3771, 2017 WL 933079, at *1 (E.D.N.Y. Mar. 8, 2017) ("Plaintiff has initiated hundreds of cases in this District, and has moved for default judgment in over one hundred of them. The facts of each case, including this one, are virtually identical."). Plaintiff J & J is a California corporation with its principal place of business in San Jose, California. Compl. ¶ 6. Defendant Firdos Grill is a domestic business corporation located in Astoria, New York. Id. ¶¶ 7–8. Defendant Syed is identified as the "President" and "Principal" of Firdos Grill. Id. ¶ 9.

Golden Boy Promotions, LLC granted J & J the "exclusive nationwide commercial distribution (closed-circuit) rights to Saul Alvarez v[.] Amir Khan, WBC World Middleweight Championship Fight Program" telecast on May 7, 2016 (the "Event"). Id. ¶ 17, Gagliardi Aff. at 1–2. Pursuant to its exclusive license, J & J entered into sublicensing agreements with various commercial establishments permitting them to "publicly exhibit" the Event for a fee. Compl. ¶¶ 18–20. The fee ranged from $2,200.00, for venues with a maximum capacity of 100 people, to $5,200.00, for venues with a maximum capacity of 500 people. ECF No. 9-2 at 18.

---

[1] The facts are drawn from the uncontested allegations in plaintiff's complaint and are taken as true for the purposes of deciding defendants' liability on this default motion. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment). Where noted, additional facts are drawn from documents that J & J submitted in support of its motion, including: an affidavit from J & J's President, Joseph M. Gagliardi, ECF No. 9-2 at 1–7, ("Gagliardi Aff."), which attaches J & J's Closed-Circuit Television License Agreement with Golden Boy Promotions, id. at 9–16, and the Rate Card, id. at 18. The motion also includes an affidavit from plaintiff's attorney, Joseph P. Loughlin, ECF No. 9-3 at 1–3, ("Loughlin Aff."), which attaches several documents including an affidavit from plaintiff's auditor, Stephanie Osgood, id. at 35–37, ("Osgood Aff.").

J & J provided sublicensees with "the electronic decoding equipment and the satellite coordinates necessary to receive the signal, or the establishment's cable or satellite provider would be notified to unscramble the reception of the [Event] for the establishment[.]" Compl. ¶ 23; Gagliardi Aff. ¶ 11.

Defendants did not pay the sublicensing fee to J & J to "publicly exhibit" the Event. Compl. ¶ 26. Stephanie Osgood, an auditor hired by J & J, visited Firdos Grill on May 7, 2016 around 10:25 p.m. and observed three televisions displaying the Event with approximately fifty patrons present. Osgood Aff. at 35–36. J & J alleges that defendants were able to increase their profits by unlawfully intercepting and displaying the Event without obtaining the proper sublicense. Compl. ¶¶ 14, 29.

## PROCEDURAL HISTORY

On May 1, 2019, plaintiff commenced this action alleging that defendants violated the FCA.[2] ECF No. 1. On May 14, 2019 and June 20, 2019, plaintiff served defendants Firdos Grill and Syed with the summons and complaint. ECF Nos. 5–6. On August 6, 2019, plaintiff requested certificates of default against defendants and on August 12, 2019, the Clerk of Court noted defendants' default. ECF Nos. 7–8. On August 28, 2019, plaintiff moved for a default judgment against defendants. ECF No. 9. Plaintiff seeks recovery of statutory damages and enhanced damages of $26,400.00, in addition to pre and post-judgment interest, costs, and attorney's fees. Id. at 3; ECF No. 9-1, Plaintiff's Memorandum In Support of Application for Default Judgment ("Memo"), at 5.

---

[2] A three-year statute of limitations applies to plaintiff's claims. J&J Sports Prods., Inc. v. Nest Rest. & Bar, Inc., No. 17-CV-4107 (NGG)(RER), 2018 WL 4658800, at *1, n.1 (E.D.N.Y. Aug. 7, 2018) ("Although the FCA provides a two-year statute of limitations for cases involving common carriers, 47 U.S.C. § 415(b), Courts in this circuit have adopted the three-year statute of limitations from the Federal Copyright Act, 17 U.S.C. § 507(b), for cases involving piracy of cable broadcasts.") (citing Nat'l Satellite Sports, Inc. v. Time Warner Entm't Co., L.P., 255 F. Supp. 2d 307, 314 (S.D.N.Y. 2003)).

**DISCUSSION**

**I.      Legal Standard**

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice") (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). On a motion for default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc., 109 F.3d at 108 (citation omitted). In determining whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."

Id. (quoting Leider v. Ralfe, No. 01 Civ. 3137 (HB)(FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)).

In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. Id. (citation omitted); see Friedman v. Sharinn & Lipshie, P.C., No. 12 Civ. 3452 (FB)(CLP), 2013 WL 1873302, at *3 (E.D.N.Y. Mar. 28, 2013) (in deciding whether liability has been established on a motion for default judgment, a court must consider "whether the claims were pleaded in the complaint, thereby placing the defendant on notice") (citing Fed. R. Civ. P. 54(c)), adopted by, 2013 WL 1869924 (E.D.N.Y. May 3, 2013).

The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111. A plaintiff may not recover damages under both Sections 553 and 605 for the same underlying incident. Kingvision Pay-Per-View, Ltd. Corp. v. New Paradise Rest., No. 99 Civ. 10020 (WHP) (AJP), 2000 WL 378053, at *2 (S.D.N.Y Apr. 11, 2000); see also J & J Sports Prods., Inc. v. Ribeiro, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008) ("Where a defendant is found liable under both § 553 and § 605, a plaintiff is entitled to have damages awarded under § 605, which provides for greater recovery[.]").

## II.     Federal Communications Act Liability

J & J alleges that defendants violated Section 605 of the FCA. Compl. ¶¶ 27–35; Memo at 3–4. The relevant portion of Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. §605(a); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, 16-CV-1318 (GBD)(BCM), 2017 WL 696126, at *8 (S.D.N.Y. Feb. 15, 2017), adopted sub nom., 2017 WL

5

2988249 (S.D.N.Y. Mar. 27, 2017) (under the Communications Act, radio communications have "long been understood to include satellite transmissions") (citation omitted). "In this Circuit, Section 605 has been applied to theft of cable communications that originated as radio or satellite communications." J & J Sports Prods., Inc. v. Johnny's Rest., No. 15-CV-6645 (NG)(ST), 2016 WL 8254906, at *2 (E.D.N.Y. Dec. 15, 2016), adopted sub nom., 2017 WL 591143 (E.D.N.Y. Feb. 14, 2017) (citing Cmty. Television Sys. Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002)). Courts have also found violations of Section 605(a) if "at least part of the Event's transmission was produced by satellite." J & J Sports Prods., Inc. v. Chulitas Enter. Corp., No. 12-CV-3177 (JS)(WDW), 2014 WL 917262, at *3 (E.D.N.Y. Mar. 10, 2014) (citation omitted).

Here, the factual allegations in plaintiff's complaint establish Firdos Grill's liability under Section 605.[3] The complaint alleges that the Firdos Grill "intercepted and/or received the satellite communication" of the Event and "divulg[ed] and publish[ed] said communication to patrons within Firdos Grill" without paying the sublicensing fee. Compl. ¶¶ 26, 28. Furthermore, the complaint alleges that the Event "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." Id. ¶ 22. These allegations, accepted as true, establish liability under Section 605. See Johnny's Rest., 2016 WL 8254906, at *3 (finding liability under Section 605(a) where plaintiff "alleges that the signal here derived from satellite communications to which Plaintiff had an exclusive license to broadcast or to sublicense."); Time Warner Cable of New York City v. Allirio, No. 99-CV-2765 (RJD), 2007 WL 1704140, at *2 (E.D.N.Y. June 12, 2007) (finding a violation of Section 605 where "[p]laintiff has stated that it receives the signals for its premium and pay-per-view programming via over-the-air transmissions from orbiting satellites and local radio towers."); Garden City Boxing Club, Inc.

---

[3] As discussed in Part III, infra, liability is established only as to the corporate defendant, Firdos Grill.

v. Focused Enter., Ltd., No. 06-CV-4874 (FB)(RER), 2007 WL 1655647, at *2 (E.D.N.Y. June 6, 2007) ("Because Garden City alleges that the Event was conveyed via satellite transmission, it has properly pleaded a claim under § 605(a)[.]"); cf. J & J Sports Prods., Inc. v. Nacipucha, No. 17-CV-1186 (AMD)(SJB), 2018 WL 2709222, at *5–6 (E.D.N.Y. May 18, 2018), adopted by, 2018 WL 2709200 (E.D.N.Y. June 5, 2018) (Section 605(a) was not violated where the complaint failed to allege that the event was transmitted over satellite or that it was a satellite communication).

### III.     Individual Liability

Although plaintiff establishes the liability of Firdos Grill, it fails to establish that defendant Syed should be held individually liable. If a plaintiff establishes that a corporate entity violated Section 605, it may seek to impose liability on the owners of the corporate entity pursuant to theories of (1) contributory infringement or (2) vicarious liability. J & J Sports Prods., Inc. v. LX Food Grocery, Inc., No. 15-CV-6505 (NGG)(PK), 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (quoting Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997)). "Contributory infringement occurs when a defendant authorize[s] the violations." Id. at *2 (citations omitted). "Vicarious liability occurs when a defendant ha[s] a right and ability to supervise that coalesced with an obvious direct financial interest." Id. (internal quotation marks and citation omitted). Merely reiterating the case law in a boilerplate fashion does not establish a defendant's individual liability. Corbin v. Wilson, No. 10-CV-3156 (NGG)(RER), 2011 WL 4374213, at *3 (E.D.N.Y. Aug. 26, 2011) ("conclusory language that parrots [controlling judicial decisions]" does not constitute a well-pleaded allegation that must be deemed true on a default).

Here, plaintiff attempts to plead both theories of contributory infringement and vicarious liability. Compl. ¶¶ 12–14. J & J alleges that Syed is the "President and Principal" of Firdos Grill, id. at ¶ 9; that he "had the right and ability to supervise the activities of Firdos Grill," id. ¶ 10; that

7

he "specifically directed the employees of Firdos Grill to unlawfully intercept [the Event] . . . or intentionally intercepted" the Event himself, id. ¶ 12; and that he "was a moving and active conscious force behind" Firdos Grill and "is responsible for all activities that occurred therein," id. ¶ 15. Furthermore, plaintiff alleges that Syed "had an obvious and direct financial interest in the activities of Firdos Grill." Id. ¶ 12.

Apart from the conclusory allegations in the complaint, there are no specific facts to support that Syed actually controlled or supervised the actions of Firdos Grill on the night of May 7, 2016. The Court may not infer liability from Syed's title alone. Merely being an officer or director "does not necessarily imply the authority to direct an infringement." J & J Sports Prods., Inc. v. James, No. 17-CV-5539 (NGG)(ST), 2018 WL 3850731, at *5 (E.D.N.Y. July 25, 2018) (citing Softel, 118 F.3d at 971); see also J & J Sports Prods., Inc. v. 291 Bar and Lounge, LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (declining to impose individual liability and noting in order to establish individual liability, plaintiff should "make adequately detailed allegations in the complaint, beyond the conclusory and vague charge of mere ownership of the offending entity.").

Plaintiff fails to demonstrate that Syed was "positioned to supervise the infringing broadcast, or directly participated in, authorized, or ha[d] knowledge of the violation." Monte Limar Sports Bar Inc., 2017 WL 933079, at *3 (internal quotation marks and citation omitted); see also J & J Sports Prods., Inc. v. Abdelraouf, No. 18 Civ. 2547 (ARR)(VMS), 2018 WL 7916309, at *7 (E.D.N.Y. Nov. 21, 2018) (allegations of supervisory titles are insufficient to establish individual liability and rather, plaintiff is required to "allege nonformulaic facts setting forth the Individual Defendant's right and ability to supervise or his participation in or knowledge of the activities, as well as Defendant's financial interest in the unlawful broadcast."); J & J Sports Prods., Inc. v. Shots Pool Hall, Inc., No. 16-CV-5067 (RRM); 2018 WL 1115915, at *2 (E.D.N.Y. Feb.

6, 2018), adopted by, 2018 WL 1116551 (E.D.N.Y. Feb. 27, 2018) (declining to find individual liability where there were allegations that the individual defendant had the "right and ability to supervise the infringing activities complained of [in the complaint]," but no specific actions were identified); Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc., 804 F. Supp. 2d 108, 113 (E.D.N.Y. 2011) (citing cases which establish that "mere ownership" is insufficient to support a finding of individual liability).

Furthermore, the complaint does not adequately allege Syed's financial interest in unlawfully broadcasting the Event. The complaint alleges that the unlawful interception by Syed was "done willfully and for purposes of direct and/or indirect commercial advantage and/or private gain[.]" Compl. ¶ 39. However, the complaint does not establish commercial advantage or private gain. There was no cover charge and it was estimated that approximately fifty patrons were present at the time the Event was displayed. Courts in this District have found such allegations insufficient to establish individual liability in similar cases. J & J Sports Prods. Inc. v. Inga, No. 18-CV-2542 (PKC)(RLM), 2019 WL 1320278, at *4–5 (E.D.N.Y. Mar. 22, 2019) (declining to hold individual defendants liable based on conclusory allegations of individual defendants having an "obvious and direct financial interest in the exploitation of the copyrighted materials."); J & J Sports Prods., Inc. v. Orellana, No. 18-CV-2052 (KAM)(VMS), 2019 WL 1177719, at *3–4 (E.D.N.Y. Mar. 13, 2019) (declining to find individual defendants liable where the establishment had no cover charge and no further evidence of financial gain).

Accordingly, the Court finds that plaintiff has failed to establish that Syed is liable under either a theory of contributory liability or vicarious liability.[4] See J & J Sports Prods., Inc. v.

---

[4] The Court acknowledges that there is varying authority on whether allegations similar to those in the instant complaint establish individual liability. See J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc., No. 17-cv-2196 (ARR)(CLP), 2018 WL 1725692, at *2 (E.D.N.Y. Apr. 10, 2018) ("As plaintiff observes, courts in this district are split on [whether an individual can be held liable on similar facts]."). In Afrikan Poetry Theatre Inc., plaintiff had

9

Taqueria Juarez Rest., Inc., No. 17 CV 4158 (NG)(LB), 2018 WL 2056181, at *7, adopted by 2018 WL 2048370 (E.D.N.Y. May 2, 2018) (denying motion for default judgment as to an individual defendant when defendant corporation was found liable under Section 605); J & J Sports Prods., Inc. v. Right Brain Rest., Inc., No. 17-CV-1191, 2017 WL 4535928, at *6 (E.D.N.Y. Oct. 10, 2017) (same).

### IV. Damages

It is well established that when a party is in default, it is "deemed to constitute a concession of all well[-]pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted); see also Credit Lyonnais Secs. (USA), Inc. v. Alcantra, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint, with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais, 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). The Court, however, does not need to hold a hearing, as "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Jean-Louis, No. 06-CV-5924 (ARR)(JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) and Credit Lyonnais, 183 F.3d at 155).

---

alleged that the individual defendant was the "officer, director, shareholder, and/or principal[]" of the corporate defendant, had an "obvious and direct financial interest in the infringement," and had "a right and ability to supervise the infringing activities." Id. (internal citations omitted). Plaintiff made similar allegations in the instant case.

As Judge Ross discussed in Afrikan Poetry Theatre Inc., the Court is "not bound to accept as true" such "legal conclusions couched as factual allegations." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Accordingly, plaintiff has failed to adequately plead that Syed should be held individually liable.

Plaintiff seeks judgment in the amount of $26,400.00 with leave to submit a motion to request pre and post-judgment interest, costs, and attorney's fees. Loughlin Aff. at 28–29. Plaintiff supports its claim for damages with the Loughlin Affidavit, the Osgood Affidavit, the Gagliardi Affidavit, and the Rate Card. These submissions provide a sufficient basis for the Court to determine damages. Accordingly, no hearing is necessary.

### a. Statutory Damages

Pursuant to Section 605, plaintiff is entitled to elect to recover statutory or actual damages. 47 U.S.C. § 605 (e)(3)(C)(i). Here, plaintiff elects to recover statutory damages. Memo at 4.

Section 605 authorizes statutory damages of no less than $1,000.00 and no more than $10,000.00 for each violation. 47 U.S.C. § 605 (e)(3)(C)(i)(II). The amount of damages to be awarded pursuant to Section 605 rests in the "sound discretion of the Court." J & J Sports Prods., Inc. Onyx Dreams Inc., No. 12-CV-5355, 2013 WL 6192546, at *4 (E.D.N.Y. Nov. 26, 2013) (citation omitted). Courts have considered the "pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." J & J Sports Prods., Inc. v. Mangos Steakhouse & Bakery, Inc., No. 13 CV 5068 (RJD)(CLP), 2014 WL 2879868, at *6 (E.D.N.Y. May 7, 2014), adopted by, 2014 WL 2879890 (E.D.N.Y. June 24, 2014) (internal quotation marks and citations omitted). Courts have also held that "there should be some proportionality between the loss suffered and the amount of statutory damages," but the damages award "should be generous enough to ensure that the plaintiff is fully compensated." Garden City Boxing Club, Inc. v. Paquita's Café, Inc., No. 06-CV-6953 (RMB)(JCF), 2007 WL 2783190, at *3 (S.D.N.Y. Sept. 26, 2007) (collecting cases).

Courts in this Circuit employ two approaches to determine statutory damages. Id. at *3. First, some courts award a flat-fee amount per violation. Id. Under the "flat-fee" method, the court calculates the amount of damages based on the sublicensing fee defendants would have paid to legally broadcast the event at issue. LX Food Grocery., Inc., 2016 WL 6905946, at *4; see Mangos Steakhouse & Bakery, Inc., 2014 WL 2879868, at *9 (awarding the sublicensing fee, $2,220.00, in statutory damages). Second, under the "per-person" method, some courts assess damages by multiplying the number of patrons present in a defendant's establishment by a set value. LX Food Grocery., Inc., 2016 WL 6905946, at *4, see Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037 (DLI)(JMA), 2005 WL 3018704, at *3–4 (E.D.N.Y. Oct. 6, 2005) (multiplying the number of patrons in the establishment during the unlawful broadcast by the residential charge for the pay-per-view event being shown, $54.95).

Here, the sublicensing fee was $2,200.00. Memo at 8. Plaintiff argues that neither approach described above adequately compensates plaintiff and instead, requests $6,600.00 in statutory damages. Id. As plaintiff itself concedes that courts in this Circuit would typically award statutory damages equivalent to the sublicensing fee, $2,200.00, id., the Court finds no reason to stray from this precedent. Accordingly, the Court respectfully recommends that plaintiff should be awarded $2,200.00 in statutory damages. See J & J Sports Prods., Inc. v. Europe, No. 18-CV-5094 (MKB)(CLP), 2019 WL 4733582, at *5 (E.D.N.Y. Sept. 27, 2019) (awarding statutory damages of $2,000.00, equivalent to the sublicensing fee); LX Food Grocery., Inc., 2016 WL 6905946, at *4 (awarding statutory damages of $2,200.00, equivalent to the sublicensing fee); Mangos Steakhouse & Bakery, Inc., 2014 WL 2879868, at *9 (same).

### b. Enhanced Statutory Damages

Plaintiff also seeks $19,800.00 in enhanced statutory damages. Memo at 6–10. Section 605

12

authorizes the Court to increase the award of damages "by an amount of not more than $100,000 for each violation" where the "court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. 605(e)(3)(C)(ii). Courts have found the interception and broadcast of the Event without permission is an indication of willfulness. J & J Sports Prods., Inc. v. Welch, No. 10-CV-0159 (KAM), 2010 WL 4683744, at *4 (E.D.N.Y. Nov. 10, 2010) ("The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness."). Firdos Grill could not have involuntarily intercepted and displayed the Event given that the instant transmission had to be decoded using electronic equipment in order for the signal to be received and displayed.  Compl. ¶¶ 22–23; Gagliardi Aff. at 3–4; 291 Bar & Lounge, LLC, 648 F. Supp. 2d at 475 (E.D.N.Y. 2009) (citing Time Warner Cable of New York City v. Googies Luncheonette, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.") and Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) ("In order for [defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act[.]")).  The Court therefore finds that Firdos Grill's acts were willful.

Courts use several factors to determine whether a defendant's willful conduct warrants enhanced damages, including, "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." J & J Sports Prods., Inc. v. Hot Shots, Inc., No. CV-09-1884 (FB), 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010) (citations omitted). "Courts typically fix the amount of enhanced damages as a multiple of the [basic] statutory damages award. . . The multiples most

commonly used by [the Eastern District of New York] are either two or three times the basic statutory damages." Joe Hand Promotions, Inc. v. Elmore, No. 11-CV-3761 (KAM)(SMG), 2013 WL 2352855 (E.D.N.Y. May 29, 2013) (internal quotation marks and citations omitted); see also Welch, 2010 WL 4683744, at *5 (doubling statutory award of $4,670.75 to award $9,341.50 in enhanced statutory damages) (citing cases); Hot Shots, Inc., 2010 WL 3522809, at *3 (trebling statutory award of $2,747.50 to award $8,242.50 in enhanced statutory damages) (citing cases).

Here, plaintiff alleges that Firdos Grill intercepted and broadcast the Event without paying the $2,200.00 sublicensing fee to plaintiff. In doing so, Firdos Grill broadcast the Event on three television screens to approximately fifty patrons. Even though the Court finds Firdos Grill's conduct willful, it did not collect a cover charge nor is there any evidence that it repeatedly violated the statute. Accordingly, in light of these factors and in order to promote the statutory objective to deter future violations of Section 605 of the FCA, I respectfully recommend that plaintiff should be awarded $4,400.00 in enhanced damages, plus $2,200.00 in statutory damages, for a total damages award of $6,600.00.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiff's motion for a default judgment should be granted in part and denied in part. The Court should grant plaintiff's motion and enter a default judgment against Firdos Grill in the amount of $6,600.00. The Court should deny plaintiff's motion for a default judgment with respect to the individual defendant, Imran Ali Syed. Plaintiff should be permitted to file a motion for post-judgment interest,[5] costs,

---

[5] Plaintiff's proposed order seeks leave to request pre-judgment interest. ECF No. 9-3 at 28–29. The request for pre-judgment interest should be denied. Section 605 does not provide for interest. Furthermore, "[t]he majority of courts to have considered the issue [of whether to award pre-judgment interest in addition to statutory damages] have denied an award of pre[-]judgment interest on the grounds that statutory damages . . . are analogous to punitive damages in that they are designed to deter others from similar infringing activity." Hot Shots, Inc., 2010 WL 3522809, *3 (internal quotation marks and citations omitted); J & J Sports Prods., Inc. v. Potions Bar & Lounge, No. 08-CV-1825

14

and attorney's fees within fourteen days from the date the Court rules on this Report and Recommendation. Plaintiff's counsel shall serve a copy of this Report and Recommendation on defendants at their last known addresses and file proof of service forthwith.

### FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: November 22, 2019
       Brooklyn, New York

---

(FB)(CLP), 2009 WL 763624, at *8 (E.D.N.Y. Mar. 23, 2009) ("because plaintiff is receiving punitive damages in addition to statutory damages, awarding pre-judgment interest is not necessary.") (citations omitted).

15